Yuo-Fong C. Amato (CA SBN 261453)
Email: bamato@gordonrees.com
GORDON & REES, LLP
101 W. Broadway, Suite 2000
San Diego, California 92101
Phone: (619) 696-6700
Fax: (619) 696-7124

Attorneys for Plaintiff
CrossFit, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

KAW

CROSSFIT, INC., a Delaware corporation,

        Plaintiff,

    v.

JENNI ALVIES, an individual; and DOES 1-10

        Defendants.

CV-13 3771

CASE NO

**COMPLAINT FOR:**

1. **Trademark Infringement**
   **[15 U.S.C § 1114];**

2. **False Designation of Origin**
   **[15 U.S.C § 1125(a)];**

3. **Trademark Dilution**
   **[15 U.S.C § 1125(c)];**

4. **Cyberpiracy**
   **[15 U.S.C § 1125(d)];**

**JURY TRIAL DEMAND**
**[FRCP 38]**

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

FILED BY FAX

Plaintiff CrossFit, Inc. ("CrossFit"), for its Complaint against Jenni Alvies ("Defendant Alvies") and DOES 1-10 (collectively, "Defendants") alleges as follows:

## Nature of the Action

1. This is an action for willful violations of CrossFit's intellectual property rights, including trademark infringement, trademark dilution, false designation of origin, and Cyberpiracy arising out of Defendants' unauthorized use of CrossFit's registered service marks and trademarks.

## Jurisdiction and Venue

2. This action arises under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.* and California state laws governing contracts.

3. This Court has subject matter jurisdiction over CrossFit's claims as federal questions pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 1338(a) and (b).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## The Parties

5. Plaintiff CrossFit, Inc., is a Delaware Corporation principally engaged in the business of fitness training and consultancy. CrossFit is the owner of protectable interests in several registered United States trademarks and service marks comprised of the term CROSSFIT®.

6. On information and belief, Defendant Jenni Alvies is a California resident residing in Brentwood, California.

7. CrossFit is ignorant of the true names and capacities of defendants DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. CrossFit will amend this complaint and allege their true names and capacities when ascertained. CrossFit is informed and believes, and thereon alleges, that each of the defendants designated as "DOE" is responsible, in some manner, for the injuries and damages to plaintiff as alleged herein, and that plaintiff's damages were proximately caused by said defendants.

COMPLAINT FOR TRADEMARK INFRINGEMENT

1       8.     Plaintiff is informed and believes and thereon alleges that at all

2  relevant times, each of the defendants, including each "DOE" defendant, were the

3  agent, servant, employee, joint-venturer, and/or partner of each of the other

4  defendants, and in doing the things herein alleged, each defendant was acting

5  within the course and scope of such agency and/or employment.

6                             **CrossFit's Intellectual Property Rights**

7       9.     Through its design, development, sales, and marketing activities,

8  CrossFit has developed a revolutionary fitness training regimen that has become

9  the principal strength and conditioning program for many police academies and

10  tactical operations teams, military special operations units, champion martial

11  artists, and thousands of professional and amateur athletes worldwide.  CrossFit

12  licenses use of its intellectual property, including the "CrossFit" name, to affiliates

13  that have received particularized training and certification from CrossFit.  The

14  CrossFit name is of particular value in the competitive "small-box" fitness training

15  industry.  CrossFit's careful cultivation, maintenance, and protection of its

16  intellectual property rights has enabled CrossFit to amass considerable goodwill

17  within its industry, and the CrossFit name is widely recognized around the world.

18  Consumers readily and singularly associate the CrossFit name with CrossFit's

19  business and services.

20       10.     CrossFit diligently protects its intellectual property through, *inter alia,*

21  trademark and service mark registration.  CrossFit owns several registered United

22  States trademarks and service marks comprised of the word mark CROSSFIT®,

23  including registered U.S. Service Mark Registration No. 3,007,458 issued on

24  October 18, 2005, for use in connection with fitness training services.  CrossFit

25  Marks ("CrossFit Marks") have been in continuous use in commerce since at least

26  the dates of their first use as indicated in their registrations to the present day.

27       11.     CrossFit provides a nationally standardized certificate program to

28  personal trainers who desire to become licensed CrossFit affiliates.  Persons who

COMPLAINT FOR TRADEMARK INFRINGEMENT

successfully complete CrossFit's certificate program and meet other requirements for affiliation are eligible to enter into annually renewable affiliate license agreements which permit limited use of the CrossFit Marks subject to various conditions. Only persons who have completed CrossFit's certification process and entered into valid affiliate license agreements are permitted to use the CrossFit Marks in the manner described in the agreements.

12. Defendant Alvies has not entered into any license agreements with CrossFit regarding the CrossFit Marks.

### Defendants' Willful Infringement

13. On or about April 2011, Defendant Alvies created a Facebook page called CrossFit Mamas (the "CrossFit Mamas Facebook Page") located at https://www.facebook.com/CrossFitMamas/info. Also on or about April 2011, Defendant Alvies also registered the blog calicrossfit.blogspot.com (the "CaliCrossFit Blog") located at http://www.calicrossfit.blogspot.com.

14. The CaliCrossFit Blog and the CrossFit Mamas Facebook Page advertised for sale apparel which bore the CrossFit Marks, including the apparel pictured below:





MILCF = Mamas In Love with CrossFit

15.    Further, Defendant Alvies used the CrossFit Marks on her CaliCrossFit Blog and the CrossFit Mamas Facebook Page to promote the sale of nutritional supplements and vitamin shakes through another website, http://crossfitmamas.myvi.net/index.html ("MyVi Page").

16.    The CrossFit Mamas Facebook Page and CaliCrossFit Blog were very popular.  At one point, the CrossFit Mamas Facebook Page had over three thousand people who liked the page.

17.    On or around May 2013, Plaintiff CrossFit discovered Defendants' infringing activities.  CrossFit contacted Defendant Alvies in early May 2013 and for several weeks thereafter requested that Defendant voluntarily cancel the CaliCrossFit Blog, the CrossFit Mamas Facebook and the MiVi Pages as well as stop selling apparel bearing the CrossFit Marks because they violated CrossFit's intellectual property rights.

18.    On May 15, 2013, Defendant Alvies represented that she stopped selling workout apparel branded with the CrossFit Marks.

19.    Based on information and belief, and despite her representation, Defendant Alvies continued to offer for sale tank-top shirts which bear the

5

CrossFit Mark.  In particular, on or around June 25, 2013, Defendant Alvies sold a tank-top shirt bearing the CrossFit Mark, and the return label still identified her company or entity as "CrossFit Mamas."  Below are true and correct photographs of the infringing tank-top shirt sold, along with the packaging (with redactions to private addresses):



/ / /

/ / /

/ / /

COMPLAINT FOR TRADEMARK INFRINGEMENT





/ / /

/ / /

/ / /

COMPLAINT FOR TRADEMARK INFRINGEMENT

CROSSFIT MAMAS
1756 La Pergola Dr.
Brentwood Ca 94513

20. On May 16, 2013, in response to Plaintiff CrossFit's cease and desist demands, Defendant Alvies offered to use "CF Mamas" instead of CrossFit Mamas to describe her blog. Plaintiff CrossFit advised that "CF Mamas" was not acceptable because it is confusingly similar to the CrossFit Marks, especially in light of Defendant Alvies' prior infringing use in the CaliCrossFit Blog and on Facebook Page. "CF" is a common abbreviation for CrossFit. In fact, the CF abbreviation appears on numerous t-shirts and other workout apparel currently offered for sale and manufactured by Reebok, CrossFit's strategic partner and exclusive licensed provider of CrossFit-branded merchandise. The use of "CF" in "CF Mamas" is clearly an abbreviation for and reference to "CrossFit." Further, Defendant Alvies still used the exact term "CrossFit" throughout her site, which is clearly dedicated to describing her CrossFit workouts.

21. Defendant Alvies' disregarded Plaintiff CrossFit's demands regarding the use of "CF" and on or about May 17, 2013, she started a new blog, http://cfmamas.blogspot.com/ (the "CF Blog"), which appeared to contain all posts from her prior CaliCrossFit Blog, including those posts from April 2011 to May 2013. The CF Blog used the CrossFit Marks to attract people to the blog which still offers for sale the MiVi nutritional supplement. Further, the CF Blog contained images of the infringing CrossFit-branded tank-top shirts that Defendant Alvies promised to stop selling on May 15, 2013.

22. On information and belief, and despite Plaintiff CrossFit's cease and desist communications, Defendant Alvies is the registered owner of the domains

8

"crossfitmamas.com" and "cfmamas.com" and as of May 17, 2013, those domains directed to the CF Blog.

23.     On or around May 20, 2013, without CrossFit's authorization, Defendant Alvies decided to change her website name to "CaliFit Mamas" and registered the "califitmamas.com" domain name. At that time, "califitmamas.com" directed to a newly renamed blog that contained all prior posts from the CF Blog and the CaliCrossFit Blog. Again, Plaintiff CrossFit advised that "CaliFit Mamas" was not acceptable because it was still confusingly similar to the CrossFit Marks, especially in light of Defendant Alvies' prior infringing use in the CaliCrossFit Blog and on Facebook Page.

24.     Defendant Alvies also refused to cancel the CrossFit Mamas Facebook page and on May 23, 2013, CrossFit was forced to file a formal takedown request based on Defendant Alvies' trademark violations. As of the filing of this Complaint, the CrossFit Mamas Facebook Page is no longer active. However, Defendant Alvies had started a new Facebook Page at https://www.facebook.com/cfmamas.

25.     On or around May 24, 2013, Defendant Alvies encouraged her blog readers to email and harass CrossFit's legal team. Despite Defendant Alvies's above-enumerated actions and subsequent slow responses, CrossFit continued to attempt communicating with Defendant Alvies.

26.     On or around July 30, 2013, Defendant Alvies represented to CrossFit that it would delete all references to "CrossFit" in her blog. Nevertheless, on or around July 31, 2013, Defendant Alvies posted the following photograph on her July 31, 2013 blog post:

COMPLAINT FOR TRADEMARK INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15 ///
16 ///
17 ///
18
19
20
21
22
23
24
25
26
27
28

27.     On or around August 5, 2013, Defendant Alvies changed her blog name to "HIIT Mamas," but to this date, her blog continues to be accessible through the infringing domain name, "califitmamas.com." Despite her earlier representations to the contrary that she would delete all references to CrossFit, Defendant Alvies' current blog still contains numerous references to CrossFit, including photographs of her infringing tank top, as pictured below:



COMPLAINT FOR TRADEMARK INFRINGEMENT

28.     Defendant Alvies has used and currently uses the CrossFit Marks throughout her various webpages to promote her own products and/or services, namely, the MiVi nutritional supplement, which she advises her blog readers to eat and/or drink every day as part of her "CrossFit" workout.  Defendant Alvies has also previously used the CrossFit Marks throughout her various webpages to promote her own products and/or services, namely, the "CrossFit Mamas" tank-top shirts.

29.     The CrossFit Marks are used or have been used so often on the aforementioned blogs that it creates the false impression that CrossFit endorses or otherwise approves the services and products Defendant Alvies offers and/or that her blogs.  In fact, the CrossFit Marks are used or were used on most of the pages on the CF Blog, and on any given page, the CrossFit Marks appear or appeared often and in prominent positions.

30.     CrossFit does not endorse and has never endorsed Defendant Alvies' businesses or her unauthorized use of the CrossFit Marks.  CrossFit has never authorized Defendant Alvies' use of the CrossFit Marks.

31.     Not only is Defendant Alvies' use of the CrossFit Marks unauthorized, the use on the CF Blog is and/or was excessive, and significantly more than is reasonably necessary to identify Defendant Alvies' products and/or services.

32.     Defendant Alvies' use of "CrossFit Mamas," "CF Mamas," and "CaliFit Mamas" in their various formats, including without limitation, domain names, is confusingly similar to the CrossFit Marks.

33.     Defendant Alvies advertises her services and products using the CrossFit Marks through the same marketing channels that CrossFit utilizes, including without limitation, the Internet.  Defendant Alvies' use of the CrossFit Marks creates and/or created the false impression that she is and/or was a licensed

CrossFit affiliate and/or sponsored or endorsed by CrossFit, creating consumer confusion.

34. On information and belief, Defendant Alvies uses and/or used the CrossFit Marks with the intent to mislead consumers into believing that Defendant Alvies is and/or was a licensed CrossFit affiliate and/or otherwise sponsored or endorsed by CrossFit and with the intent to profit by trading on CrossFit's goodwill.

35. Defendant Alvies was and is, at all relevant times, aware of CrossFit's prior use, ownership, and registration of the CrossFit Marks.

36. CrossFit has never authorized or licensed Defendant Alvies to use the CrossFit Marks in the manner described herein.

37. Defendant Alvies' use and prior use of the CrossFit Marks reflects a deliberate attempt to make Defendant Alvies' services and/or goods appear as if they originate from a licensed CrossFit affiliate or otherwise sponsored or endorsed by CrossFit. Defendant Alvies' intent is to give her services and/or goods an instant credibility that is not otherwise warranted, and to confuse the unsuspecting consumer.

38. Defendant Alvies' use and prior use of the CrossFit Marks is likely to cause confusion or mistake, or deceive purchasers, potential purchasers, and the relevant consuming public and trade as to the source or sponsorship or approval of her services and/or products, and/or as to her affiliation with CrossFit, and are thereby causing harm to CrossFit's reputation and goodwill.

39. Defendant Alvies' use and prior use of the CrossFit Marks in connection with her services and/or goods is likely to cause initial interest confusion or mistake, or initially deceive purchasers, potential purchasers, and the relevant consuming public and trade as to the source or sponsorship or approval of her services and/or products, and/or as to her affiliation with CrossFit, and are thereby causing harm to CrossFit's reputation and goodwill.

40. Defendant Alvies' unlawful conduct is causing and will continue to cause harm to CrossFit. In particular, consumers who view Defendant Alvies' aforementioned blogs will believe or did believe that Defendant's services and/or goods are and/or were associated with CrossFit and/or CrossFit Marks. This conduct, if not enjoined, will undermine the goodwill that CrossFit has spent decades carefully cultivating for its marks.

## FIRST CLAIM
### Trademark Infringement (15 U.S.C. § 1114)
### (Against All Defendants)

41. CrossFit repeats and realleges the allegations set forth above.

42. This claim is for trademark infringement under the laws of the United States, Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

43. Defendants used CrossFit's name to advertise and sell Defendants' products in violation of CrossFit's rights in its registered trademarks and service marks.

44. Defendants' use of CrossFit Marks is likely to cause confusion, mistake, and to deceive consumers.

45. Defendants' actions constitute a blatant attempt to confuse the consuming public and to trade off CrossFit's goodwill.

46. Defendants acted knowingly and willfully, with full knowledge of the likelihood of confusion and with the intent to deceive consumers in order to trade off the efforts and earned goodwill and reputation of CrossFit.

47. By reason of the foregoing acts of trademark infringement, CrossFit has been injured in an amount not yet ascertained. Further, Defendants have been unjustly enriched by virtue of their deception of consumers and misappropriation of CrossFit's goodwill.

48. In addition, as a result of Defendants' acts of infringement, CrossFit suffered and will continue to suffer irreparable harm for which CrossFit has no adequate remedy at law, including damage to CrossFit's goodwill. Unless

14

1 Defendants' acts of infringement are enjoined by this Court, CrossFit will continue
2 to suffer irreparable harm.

3     49.     Defendants' actions have been knowing, intentional, wanton, and
4 willful.  The principles of equity warrant an award to CrossFit of treble damages
5 and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. §
6 1117.

**SECOND CLAIM**
**False Designation of Origin  (15 U.S.C. § 1125(a))**
**(Against All Defendants)**

9     50.     CrossFit repeats and realleges the allegations set forth above.

10    51.     Defendants' use of CrossFit Marks in interstate commerce, without
11 CrossFit's consent, is a false designation of origin causing a likelihood of
12 confusion, mistake, and deception as to source, sponsorship, affiliation, and/or
13 connection in the minds of the public.  Defendants' conduct infringed CrossFit's
14 trademark rights in violation of Section 43(a) of the Lanham Act, 15 U.S.C.
15 § 1125(a)(1).

16    52.     By reason of the foregoing, CrossFit has been injured in an amount
17 not yet fully determined.  Further, Defendants have been unjustly enriched by
18 virtue of their deception of consumers and misappropriation of CrossFit's
19 goodwill.

20    53.     In addition, as a result of Defendants' acts of infringement, CrossFit
21 suffered and will continue to suffer irreparable harm for which CrossFit has no
22 adequate remedy at law, including damage to CrossFit's goodwill.  Unless
23 Defendants' acts of infringement are enjoined by this Court, CrossFit will continue
24 to suffer irreparable harm.

25    54.     Defendants' actions have been knowing, intentional, wanton, and
26 willful.  The principles of equity warrant an award to CrossFit of treble damages
27 and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. §
28 1117.

COMPLAINT FOR TRADEMARK INFRINGEMENT

## THIRD CLAIM
### Trademark Dilution  (15 U.S.C. § 1125(c))
### (Against All Defendants)

55.  CrossFit repeats and realleges the allegations set forth above.

56.  This claim is for trademark dilution under the laws of the United States, Section 43 of The Lanham Act, 15 U.S.C. § 1125(c).

57.  Because of the substantive investment CrossFit has made in marketing its business, throughout years of continuous use in commerce, including advertising and extensive marketing, CrossFit's service marks and trademarks have become instantly recognizable and distinctive in the fitness industry, have gained secondary meaning, and have become both distinctive and famous. Thus, CrossFit Marks qualify as "famous marks" under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c).

58.  Defendants' use of the CrossFit Marks began after CrossFit's Marks became famous.

59.  Defendants' unauthorized use of the CrossFit name is likely to cause dilution by blurring of the CrossFit Marks.

60.  Defendants willfully intended to trade on the recognition of the famous CrossFit Marks.

61.  By reason of the foregoing acts of trademark dilution, CrossFit has been injured in an amount not yet ascertained.  Further, Defendants have been unjustly enriched by virtue of their dilution of CrossFit Marks.

62.  In addition, as a result of Defendants' acts of infringement, CrossFit suffered and will continue to suffer irreparable harm for which CrossFit has no adequate remedy at law, including damage to CrossFit's goodwill.  Unless Defendants' acts of infringement are enjoined by this Court, CrossFit will continue to suffer irreparable harm.

63.  Defendants' actions have been knowing, intentional, wanton, and willful.  The principles of equity warrant an award to CrossFit of treble damages

16

and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

**FOURTH CLAIM**
**Cyberpiracy**
**(Against all Defendants)**

64. CrossFit repeats and realleges the allegations set forth above.

65. This claim is brought under the Cyberpiracy Protection Act, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(d).

66. On information and belief, Defendants are the registrant of the domain names "www.crossfitmamas.com," "www.cfmamas.com," and "www.califitmamas.com"; these domain names are confusingly similar to and dilutive of CrossFit's registered trademarks and service marks. At the time Defendants registered the above domain names, the CrossFit Marks were distinctive and famous.

67. Defendants used and are presently using the domain names "www.crossfitmamas.com," "www.cfmamas.com," and "www.califitmamas.com" in bad faith with the intent to profit from unauthorized use of CrossFit's mark. Defendants' bad faith is established, *inter alia*, because despite the fact that CrossFit has specifically informed Defendants that their domain names are likely to create consumer confusion and constitutes unauthorized use of the CrossFit name, Defendants used and continue to use the domain names with the intent to profit off consumer deception and misappropriation of CrossFit's goodwill.

68. Defendants have acted knowingly and willfully. Defendants' knowing and willful behavior constitute grounds for CrossFit's recovery of the maximum allowable statutory damages under 15 U.S.C. § 1117(d), $100,000.00 per domain name, should CrossFit elect to recover statutory damages in lieu of actual damages and profits.

69.     As a result of Defendants' acts, CrossFit has sustained damages to its goodwill and reputation.  As a result of Defendants' acts, CrossFit has sustained actual damages in an amount to be proven at trial.

70.     Pursuant to 15 U.S.C. § 1117, CrossFit is also entitled to its costs and Defendants' profits.

71.     As a result of Defendants' acts, CrossFit has suffered and will continue to suffer irreparable harm to its goodwill and reputation, and Plaintiff has no adequate remedy at law with respect to this injury.  Unless Defendant's acts are enjoined by this Court, Plaintiff will continue to suffer irreparable harm and/or a risk of irreparable harm.

72.     Pursuant to 15 U.S.C. § 1125(d)(1)(C), CrossFit is entitled to an order forfeiting, cancelling, or transferring the above domain names to CrossFit.

73.     As Defendants' acts have been knowing, intentional, wanton, and willful, CrossFit is further entitled to treble damages and attorneys fees, and costs pursuant to 15 U.S.C. § 1117.

**WHEREFORE**, CrossFit prays the Court grant relief as follows:

1.     Judgment in CrossFit's favor on all claims herein;

2.     A preliminary and permanent injunction preventing Defendants and those additional parties specified in Federal Rule of Civil Procedure 65(d) from continued infringement of CrossFit's intellectual property rights, including infringement of CrossFit's registered trademarks and service marks;

3.     An accounting of profits and damages resulting from Defendants' false designation of origin, trademark infringement, trademark dilution, and unfair competition, and trebling of such damages under the trademark laws because of the knowing, intentional, willful, and wanton nature of Defendants' conduct;

4.     An award to CrossFit of (a) an amount equal to the actual damages suffered by CrossFit as a result of the infringement of the CrossFit Marks; (b) an amount equal to the profits earned by Defendants as a result of their infringement;

18

(c) an amount equal to three times the monetary award assessed in view of Defendants' willful and wanton infringement; (d) pre-judgment interest and post-judgment interest; (e) an amount equal to CrossFit's reasonable attorney's fees, as an "exceptional" case under 15 U.S.C. § 1117;

    5.    On the Cyberpiracy claim, an order forfeiting, cancelling, or transferring the domain names "www.crossfitmamas.com," "www.cfmamas.com," and "www.califitmamas.com" to CrossFit pursuant to 15 U.S.C. § 1125 (d)(1)(C);

    6.    On the Cyberpiracy claim, the ability to elect the maximum statutory damages of $100,00.00 per infringing domain name pursuant to 15 U.S.C. § 1117(d);

    7.    An award of punitive damages for intentional and willful acts;

    8.    An award of interest, attorney's fees, and costs; and

    9.    Such other and further relief as the Court deems proper.

DATED: August 14, 2013

Respectfully submitted,

GORDON & REES LLP

By: _____

Yuo-Fong C. Amato
Attorneys for Plaintiff
CrossFit, Inc.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, CrossFit hereby demands a jury trial on all issues triable as of right to a jury.

DATED:  August 14, 2013

Respectfully submitted,

GORDON & REES LLP

By: _____

Yuo-Fong C. Amato
Attorneys for Plaintiff
CrossFit, Inc.