1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KRONENBERGER ROSENFELD, LLP**
Virginia A. Sanderson (Bar No. 240241)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:  (415) 955-1158
ginny@KRInternetLaw.com

Attorneys for Plaintiff

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CROSSFIT, INC.**, *et al.*<br><br>                    Plaintiff,<br><br>         v.<br><br>**JENNI ALVIES**, an individual; and **ROES 1-10**,<br><br>                    Defendants. | Case No. 4:13-cv-03771-SC<br><br>**DEFENDANT JENNI ALVIES' FIRST AMENDED COUNTERCLAIM** |

DEFENDANT J. ALVIES' FIRST AMENDED COUNTERCLAIM

Counterclaimant Jenni Alvies ("Alvies"), by and through her undersigned attorneys, alleges as follows:

## INTRODUCTION

1.     In this, the Information Age, the term "cyberbullying" has been coined to refer to the use of electronic media to publically intimidate or threaten others.   While many may associate cyberbullies with teenagers who have taken their schoolyard taunts to Twitter and Facebook, the corporate sphere contains its own cyberbullies.

2.     Counter-Defendant CrossFit, Inc. ("CrossFit") is a corporate cyberbully. CrossFit routinely uses electronic media, its in-house legal team, and paid legal counsel to harass, intimidate and annoy comparably helpless fitness bloggers and others by threatening (and taking) legal action against said bloggers unless they submit entirely to CrossFit's unreasonable demands to take down their blogs, enter into draconian settlement agreements or stipulated judgments, and otherwise forfeit their rights.

3.     CrossFit's filing of its complaint for various Lanham Act claims against Alvies is just the latest in a series of aggressive, abusive, and unlawful attempts by CrossFit to bully a fitness blogger and eliminate its competition.

4.     Although CrossFit asserts its Complaint is filed in support of its existing trademark rights, the truth is that CrossFit is seeking to eliminate potential problems for trademark applications it hopes to get approved in the future.   Such conduct constitutes, among other things, a violation of the Lanham Act, an unlawful and deceptive business practice, and an abuse of process.

5.     CrossFit also routinely abuses and violates the Copyright Act by sending so-called "takedown notices" pursuant to the Digital Millennium Copyright Act that are not based on any copyright rights, but rather an assertion of trademark rights.

6.     Since January 2013, and as of the date of this Amended Counterclaim, CrossFit has filed over 20 federal lawsuits that are nearly identical to the claims asserted against Alvies—a number that increases on a near-weekly basis.

7.     There is a fine line between aggressively defending one's intellectual

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1  property rights and unlawful attempts to enforce "rights" one does not have, thereby

2  infringing on the rights of others.  Through the instant action and others, CrossFit has

3  undoubtedly crossed that line.

4      8.    Through this counterclaim, Alvies now seeks relief, including declaratory

5  relief, establishing the boundary between CrossFit's trademark rights and her own.

6      9.    CrossFit has filed a Complaint against Alvies for certain causes of action

7  alleged to have arisen out of CrossFit's trademark rights and other rights as stated in that

8  pleading.  Alvies has answered the Complaint and denies all liability thereunder.  The

9  Complaint is referred to and incorporated herein only as a restatement of the allegations

10  from which this Counterclaim arises, and not as an admission of the truth or merit of any

11  of the allegations in the Complaint, nor as an admission of any liability thereunder.

**THE PARTIES**

12

13      10.   Defendant and Counterclaimant Jenni Alvies is an individual residing in

14  Brentwood, California.

15      11.   At all relevant times, Plaintiff and Counter-Defendant CrossFit, Inc. is and

16  was a corporation formed under the laws of the State of Delaware.  On information and

17  belief, CrossFit maintains its principal place of business in Washington, D.C.   On

18  information and belief, CrossFit has affiliates located throughout the State of California

19  and thereby conducts business throughout California.

20      12.   The true names of Counter-defendants sued herein under the fictitious

21  names ROES 1 through 10 are unknown to Alvies, and Alvies will seek leave of Court to

22  amend this Counterclaim to allege such names as soon as they are ascertained and/or

23  confirmed.  All references in this Counterclaim to any of the Counter-defendants shall

24  also include all of them, unless otherwise specified.

25      13.   As alleged herein, at all relevant times, CrossFit and ROES 1 through 10,

26  and each of them, were the agents, servants, and employees of each other, and in doing

27  the things hereinafter alleged, were acting in the scope of their authority as agents,

28  servants, and employees and with the permission, consent, authorization, and ratification

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1  of each other.

2                    **JURISDICTION AND VENUE**

3        14.    This Court has subject matter jurisdiction over this Counterclaim under 28

4  U.S.C. §§1131 and 1338 for Alvies' claims arising under the Declaratory Judgment Act,

5  28 U.S.C. § 2201 <u>et seq.</u>, the Lanham Act, 15 U.S.C. § 1125(a), and the Copyright Act,

6  17 U.S.C. § 501 <u>et seq.</u>  This Court has supplemental jurisdiction over Alvies' remaining

7  claims under 28 U.S.C. § 1367.

8        15.    Venue is proper under 28 U.S.C. § 1391.

9        16.    This Court has personal jurisdiction over CrossFit because CrossFit has

10  submitted to the Court for purposes of this dispute by filing its Complaint.  In addition,

11  CrossFit has done substantial and continuous business with California residents, and

12  CrossFit has purposefully directed substantial and pervasive activities at the residents of

13  California such that CrossFit can and should reasonably expect to be haled into the

14  Courts of California.

15              **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

16                          **<u>Alvies' Blog</u>**

17        17.    Alvies is the wife of a fireman and a stay-at-home mother of four children.

18        18.    After the birth of her fourth child, Alvies sought to get in shape, and was

19  introduced to high-intensity interval or cross-fitness training by her husband, who

20  engaged in such workouts at work.

21        19.    Alvies did not initially have the physical stamina or time to complete the

22  high-intensity workouts or access to the gym equipment necessary to perform some of

23  the exercises—such as a rope for climbing.  Accordingly, Alvies began writing her own

24  modified workouts to accommodate the strength level, resources, and lifestyle of a busy

25  mom.

26        20.    As often happens in these situations, once Alvies' friends and family

27  noticed a difference in her appearance and fitness level, they asked for her secret.

28  Alvies began texting her personalized daily workout to these friends, and eventually one

Case No. 4:13-cv-03771-SC            4            **DEFENDANT J. ALVIES' FIRST AMENDED**
                                                   **COUNTERCLAIM**

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108



1    of them suggested she post them to a blog instead.

2        21.    On this suggestion, Alvies launched her blog ("the Blog") in or around April

3    2011 at <crossfitmamas.blogspot.com>.    Readership for the Blog quickly grew, and

4    through it Alvies has undoubtedly introduced thousands of women to high-intensity

5    interval training.  Readers of the Blog use the comments section to post and track their

6    personal progress on certain exercises.

7        22.    Posting daily routines and other information to the Blog requires substantial

8    time and effort on Alvies' part.  Although she has added Google AdWords advertising

9    and a link to purchase vitamin meal-replacement shakes (the "Vitamin Shakes") in an

10   effort to recoup some money in exchange for such efforts, these endeavors have not

11   been very profitable.  Alvies has never viewed the Blog as a business but rather a labor

12   of love.

13                    **CrossFits' Trademarks (and Lack Thereof)**

14       23.    CrossFit is the registered owner of the trademark CROSSFIT, U.S. Patent

15   and Trademark Office ("USPTO") Registration No. 3007458, for International Class 041,

16   "Fitness Training."

17       24.    CrossFit has also filed several trademark applications for other uses of

18   CROSSFIT.  Such applications have been filed on an "intent-to-use" basis, meaning that

19   CrossFit admits that it has not yet used the mark in commerce, and that the USPTO has

20   not yet reviewed or granted the application (collectively, the "Intent-to-Use Applications").

21       25.    For example, on December 3, 2012, CrossFit filed an Intent-to-Use

22   Application (USPTO Ser. No. 85792895) for "Nutritional energy bars for use as a meal

23   substitute; nutritional drinks used for meal replacement; nutritional supplements; drug

24   testing kits comprised of medical diagnostic reagents and assays for testing body fluids."

25   The application was signed under penalty of perjury by CrossFit's General Counsel, Dale

26   Saran.  The application was filed on an Intent-to-Use basis, and remains as such as of

27   the date of this Amended Counterclaim.

28       26.    As another example, on April 22, 2009, CrossFit filed an Intent-to-Use

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1  Application (USPTO Ser. No. 77719836) for "Computer software that allows users to

2  track and utilize results of fitness workouts; computer application software for mobile

3  phones; digital music downloadable from the Internet."  The application remains on an

4  Intent-to-Use basis as of the date of this Amended Counterclaim.

5        27.    On September 24, 2013, CrossFit filed another Intent-to-Use Application

6  identical to the one mentioned in the preceding paragraph, (USPTO Ser. No. 86072983),

7  for "Computer software that allows users to track and utilize results of fitness workouts;

8  computer application software for mobile phones; digital music downloadable from the

9  Internet."   The application remains on an Intent-to-Use basis as of the date of this

10  Amended Counterclaim.

11        28.    In addition to the foregoing examples, CrossFit has filed Intent-to-Use

12  Applications for weight loss equipment (USPTO Ser. No. 85936449), magazines and

13  books (USPTO Ser. No. 85792892), sports bags (USPTO Ser. No. 85629318), and

14  computer software to track workouts (USPTO Ser. No. 77719836).

15        29.    While the Intent-to-Use Applications are a matter of public record, CrossFit

16  appears to want to maintain a low profile for its plans to enter these markets.   For

17  example, CrossFit's CEO Greg Glassman was interviewed this year—and after most of

18  the Intent-to-Use Applications were filed—for a July 2013 *Inc.* magazine article aptly-

19  entitled "Do Not Cross CrossFit."[1] Therein, author Burt Helm recounts of his interview

20  with Glassman that Glassman said he would not enter the nutritional supplement or

21  exercise equipment markets:

22        He also makes a concerted effort to avoid new streams of revenue.
        CrossFit makes most of its money from training seminars: Every weekend,
23        it certifies hundreds of people as trainers, at $1,000 a pop.  It also collects
        registration fees for the CrossFit Games, royalties from Reebok for
24        CrossFit apparel, and annual affiliate fees.  The affiliate fees, which top
        out at $3,000 a year, are locked in at their original rates.   Joshua
25        Newman, who runs a big, successful box called CrossFit NYC, told me he
        pays just $500 a year.
26

27        _____

28  [1] Available at http://www.inc.com/magazine/201307/burt-helm/crossfit-empire.html/3.

**DEFENDANT J. ALVIES' FIRST AMENDED
                                                                          COUNTERCLAIM**

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

> To Glassman, this is a philosophical choice.   Selling CrossFit-branded equipment, nutritional supplements, or anything else would encroach on his box owners' freedom.   "They're their own tribes," he says.   "I'm not going into spaces that aren't our own."

30.     Notably, CrossFit does <u>not</u> own a registered trademark, and has <u>not</u> filed a trademark application for any of the following marks referenced in the Complaint:

    a.  CF

    b.  CF Mamas or CFMamas

    c.  Califit Mamas or CalifitMamas.

### CrossFit's Unlawful and Abusive Efforts to Eliminate Existing Uses in Commerce of Certain Marks in an Effort to Improve CrossFit's Ability to Successfully Register the Marks That Are the Subject of the Intent-to-Use Applications

31.     In January 2013, CrossFit, with the assistance of ROES 1 through 10, began filing federal lawsuits alleging infringement of CrossFit's trademarks, akin to the allegations in the Complaint.  On information and belief, CrossFit's purpose in filing these lawsuits, at least in part, is <u>not</u> to protect its existing marks, but to eliminate potentially competing or confusing uses of the marks at issue in the Intent-to-Use Applications.  In other words, under the pretense of invoking the Lanham Act, CrossFit seeks to eliminate competition in markets it has not even entered yet.

32.     According to PACER, CrossFit, with the assistance of ROES 1 through 10, has filed over 20 federal lawsuits since January 1, 2013—that is, subsequent to and concurrent with the filing of the Intent-to-Use Applications.  By comparison, CrossFit filed only 3 federal lawsuits in 2012.

33.     For example, in addition to the current suit, on May 8, 2013, CrossFit filed *CrossFit v. Jenkins*, Case No. 1:13-cv-01219-MSK-CBS, wherein CrossFit alleged that the defendant had violated CrossFit's trademarks by offering "health and sports performance related vitamins, supplements and other nutritional products for sale"— which speaks to one of the Intent-to-Use Applications.

34.     On information and belief, in addition to filing the aforementioned lawsuits,

7

**DEFENDANT J. ALVIES' FIRST AMENDED COUNTERCLAIM**

CrossFit, with the assistance of ROES 1 through 10, has issued hundreds of cease-and-desist letters to Internet bloggers, website owners, and others demanding that they delete or otherwise disable their blogs and websites or face costly legal action.

35.    The Internet is replete with information concerning CrossFit's cease-and-desist attempts, and many of them address goods and services covered by the Intent-to-Use Applications rather than any existing mark.

36.    For example, in a Tumblr post located at http://csm.tumblr.com/post/51599117446/cease-and-desist-holes-crossfit-inc, a mobile phone application developer writes:

> *CrossFit, Inc. recently sent me a cease and desist notice for my app, WOD, because I mentioned "CrossFit" in the description and title of the app.*
>
> *I contend that I was using "CrossFit" in a descriptive manner, and that my usage may have been interpreted as fair use.  I wanted to work with CrossFit Inc. to celar this up, but they decided instead to be hard-line [expletive] about it.  I've removed my app from the store, and submitted a new version that makes no mention of "CrossFit" in the app metadata.*

37.    As another example, in a LawGuru post located at http://www.lawguru.com/legal-questions/california-intellectual-property/recently-ceaseanddesist-email-crossfit-demanding-239206455/, the a mobile phone application developer writes:

> *I was recently sent a cease-and-desist email from someone associated with CrossFit, Inc, demanding that I remove any references to the word "CrossFit" from my iPhone application's information on the Apple App Store.  I complied with their request.*

38.    Mobile phone applications are the subject of not one, but two Intent-to-Use Applications rather than any existing mark.

39.    These Internet postings demonstrate that most of the recipients of CrossFit's legal demands cannot afford the time and expense of defending against CrossFit's aggressive litigation tactics and therefore cave to CrossFit's demands regardless of their potential rights.

40.    On information and belief, in addition to filing the aforementioned lawsuits

8

**DEFENDANT J. ALVIES' FIRST AMENDED COUNTERCLAIM**

1 and issuing the aforementioned cease-and-desist letters, CrossFit, with the assistance of

2 ROES 1 through 10, has secured the removal of blogs, websites, Facebook pages, and

3 other media by issuing so-called "takedown notices" to the hosts of said media,

4 purportedly pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.

5      41.    In order to qualify for "safe harbor" under the DMCA, Internet hosts must

6 remove content that infringes the issuer's <u>copyright</u> upon receipt of a DMCA takedown

7 notice.  The DMCA does not address trademark infringement.

8      42.    On information and belief, CrossFit's DMCA takedown notices have been

9 improper in that they have been based on alleged trademark infringement, rather than

10 copyright infringement.

11      43.    On information and belief, CrossFit, ROES 1 through 10, and each of them,

12 are legally sophisticated parties who know that the demands they have made in the

13 lawsuits, the cease-and-desist letters, and the DMCA takedown notices exceed the

14 bounds of the Lanham Act, the DMCA, and CrossFit's rights in general.

15      44.    By contrast, on information and belief, the defendants to the lawsuits and

16 other persons and entities affected by the lawsuits, the cease-and-desist letters, and the

17 DMCA takedown notices are unsophisticated parties without sufficient legal background

18 (or financial ability to retain qualified legal representation) to know that CrossFit's

19 demands are excessive, abusive, and unsupported by the law.

20      45.    On information and belief, CrossFit, ROES 1 through 10, and each of them,

21 have exploited the foregoing imbalance of sophistication and legal background to

22 convince the unsophisticated parties to voluntarily delete their websites and blogs, and to

23 enter into draconian settlement agreements and/or stipulated judgments, all of which

24 serve to pave the way for CrossFit's future market domination for the goods and services

25 contemplated in the Intent-to-Use Applications.

26                   **CrossFit's Harassment of Alvies**

27      46.    On May 9, 2013—<u>over two years after the Blog was started</u>—Alvies was

28

9

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA   94108

contacted by Esther Dohl ("Dohl")[2], who identified herself as an in-house paralegal for CrossFit.

47.   On information and belief, at all times relevant, Dohl was acting as an agent, representative, and/or employee of CrossFit, and was acting within the scope of such agency and/or employment.

48.   Dohl demanded that Alvies immediately stop using the CrossFit name on the Blog and her affiliated Facebook page.  This demand took Alvies by surprise as she had been operating the Blog for several years without any such demand by CrossFit, and she did not believe the Blog to be infringing in any respect.  Regardless, Alvies attempted to work with Dohl to satisfy CrossFit's demands, only to be continually berated by Dohl.

49.   Alvies worked with Dohl to reach an agreement that Alvies would move the Blog to the domains <califitmamas.com> and <califitmamas.blogspot.com>.

50.   The overall tenor of Dohl's communications with Alvies can be summarized as unprofessional at best and bullying at worst.  For example, when Alvies notified Dohl that a domain they had previously agreed upon as appropriate for the Blog, <califitmamas.blogspot.com>, had become unavailable, Dohl responded, by email:

> *You are obviously trying VERY VERY VERY hard to piggy back on the CrossFit name.  Please stop.  I'm glad someone stole http://califitmamas.blogspot.com/ because now you have an experience of what it is for someone to steal your name.  Get your own ideas and name or legally become part of the CrossFit community.  Until then, you are trademark leech.*

51.   Dohl also attempted to exploit Alvies' unfamiliarity with trademark law by grossly exaggerating CrossFit's rights.  For example, Dohl has made the ridiculous assertion that CrossFit owns the rights to the initials "CF":

> *Yes CF can stand for anything.  But in the context of trademark infringement, trademark law takes into consideration likelihood of confusion of one brand with another.  CROSSFIT is a registered trademark in the class of health and fitness services (Class 41).  A common abbreviation for CrossFit and reference to CrossFit is "CF."  A*

---

[2] If warranted by initial discovery, Alvies will amend this Counterclaim to name Dohl as a ROE defendant.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

*federal judge will not allow that you direct all your "CrossFit Mamas" clientele to a new website blog labeled "CFMamas." Calling you [sic] blog CFMamas will be actionable. In other words, we will sue you.*

52.     Dohl has also communicated with several third parties regarding Alvies and has made false statements therein about her communications with Alvies, claiming they took place with a frequency they did not, or that Alvies flatly "refused" to meet certain demands. In these third-party communications, Dohl further states that Alvies' workouts were analyzed by an expert and found to be unprofessional, stupid, and unsafe. For example, Dohl sent the following in an email to a third party reader of the Blog:

*[Alvies] doesn't have the knowledge of programming. I have about 7 years of CrossFit experience, and 4 years of CrossFit Training experience. I quickly scanned her blog and assessed a few days of her workouts and thought "that is bad programming." And I sent links to her blog to other, more experienced trainers to see what they thought of the workouts. I received this response from someone with over ten years of CrossFit training/programming experience:*

*"I will look further today but first thing I see is 5/31 60 deads and 60 snatches three days later 50 swings followed by more deads the next day. Without even looking at the workout structure that looks stupid and unsafe. A great deal of explosively opening of the hips with a tired lower back."[3]*

53.     Alvies' workouts are not bad or unsafe.

54.     As admitted in Paragraph 24 of the Complaint, CrossFit has also sent legal demands to third parties, including Facebook, for removal of the Blog and Alvies' Facebook Page.

55.     On information and belief, CrossFit, with the assistance of ROES 1 through 10, sent a DMCA takedown notice to Facebook, which resulted in suspension of Alvies' Facebook page. On information and belief, the DMCA takedown notice improperly asserted for the protection of trademark rights.

56.     Through substantial effort by Alvies, and based on her agreement with CrossFit, as reached through Dohl, Alvies moved the entire Blog to <califitmamas.com.>

---

[3] If warranted by initial discovery, Alvies will amend this Counterclaim to name the author of this statement as a ROE defendant.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

57.     Despite the fact that Alvies complied with CrossFit's demands, CrossFit continued its harassment of Alvies, repeatedly demanding that she disable her Google AdWords and stop selling the Vitamin Shakes.

58.     Indeed, the sale of the Vitamin Shakes—an unrelated line of nutritional meal replacement shakes by ViSalus—was an issue repeatedly raised by CrossFit in its demands of Alvies.  This demand initially confused Alvies as the sale of the shakes was not tied in any way by Alvies to CrossFit.  It was only after Alvies learned, through counsel, of the Intent-to-Use Application for nutritional shakes and supplements.

59.     Eventually, CrossFit, through its legal counsel,[4] informed Alvies that it disagreed with Dohl's representation that <califitmamas.com> was an acceptable domain for the Blog.  Accordingly, after additional harassment, Alvies moved the Blog a second time to <hiitmamas.blogspot.com>.

60.     Even after this second move, CrossFit, through its legal counsel, continued to harass Alvies, repeatedly demanding that she, among other things, (a) delete nearly two and a half years of posts on the Blog (including the reader workout records maintained in the comments) and "start over," and (2) stop selling the Vitamin Shakes.

61.     Indeed, on July 17, 2003, and after Alvies had already gone to so many lengths to satisfy CrossFit's demands about the name and location of the Blog, CrossFit's counsel stated the following:

> *She needs to remove any commercial element of her blog.  For example, her blog cannot promote the MyVi [Vitamin Shakes] Challenge or offer any other goods/services such that Ms. Alvies is profiting from her use of the CROSSFIT Marks.*

62.     CrossFit also refers to the sale of the Vitamin Shakes in Paragraph 15 of the Complaint, where CrossFit Alleges:

Further, Defendant Alvies used the CrossFit Marks on her CaliCrossFit

---

[4]  CrossFit's legal counsel has participated in and directed other harassment of Alvies, including the purchase of a tank top under false and deceptive pretenses (see Complaint ¶ 19).  If warranted by initial discovery, Alvies will amend this Counterclaim to name CrossFit's counsel, and other participants in the tank top purchase, as ROE defendants.

Case No. 4:13-cv-03771-SC                    12          **DEFENDANT J. ALVIES' FIRST AMENDED COUNTERCLAIM**

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94102

Blog and the CrossFit Mamas Facebook Page to promote the sale of nutritional supplements and vitamin shakes through another website, http://crossfitmamas.myvi.net/index.html ("MyVi Page").

63.    CrossFit admits its demands that Alvies stop selling the Vitamin Shakes in Paragraph 17 of the Complaint.

64.    On information and belief, CrossFit's incessant demands that Alvies delete the Blog in its entirety and stop selling the Vitamin Shakes is an improper effort to eradicate all Internet evidence of Alvies' prior use in commerce of marks subject to the Intent-to-Use Applications regarding nutritional shakes, computer software to track workouts, and others.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment Against CrossFit)

65.    Alvies restates and incorporates the allegations set forth above in Paragraphs 1 through 64 as though fully rewritten herein.

66.    Alvies asserts this first cause of action for declaratory judgment of issues arising out of federal trademark and copyright law.

67.    A present and actual controversy exists between the parties regarding the intellectual property rights of CrossFit.

68.    Alvies now seeks a declaratory judgment from this Court that CrossFit does not have a registered or common-law trademark in any of the following marks or permutations thereof:

    a.  CF

    b.  CF Mamas or CFMamas

    c.  Califit Mamas or CalifitMamas.

69.    Alvies now seeks a declaratory judgment from this Court that the following marks, or permutations thereof, do not create a likelihood of consumer confusion with CrossFit's rights in CROSSFIT:

    a.  CF

    b.  CF Mamas or CFMamas

c. Califit Mamas or CalifitMamas.

70.    Alvies now seeks a declaratory judgment from this Court that CrossFit is estopped from asserting trademark infringement claims against Alvies regarding her use of the following marks, or permutations thereof, because CrossFit initially agreed that Alvies could use such marks:

a. Califit Mamas or CalifitMamas.

71.    Alvies now seeks a declaratory judgment from this Court that CrossFit, and ROES 1 through 10, improperly issued DMCA takedown notices, which affected Alvies, based on an assertion of trademark rights.

72.    Alvies now seeks a declaratory judgment from this Court that CrossFit, and ROES 1 through 10, violated 17 U.S.C. § 512(f) by knowingly and materially misrepresenting in the DMCA takedown notices concerning Alvies that material or activity was infringing of any copyright, or by otherwise knowingly and materially abusing the DMCA takedown process, and as such, that CrossFit, and ROES 1 through 10, are liable for Alvies' damages, including costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### (Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, Against All Counter-Defendants)

73.    Alvies incorporates the allegations set forth above in Paragraphs 1 through 49 as though fully rewritten herein.

74.    Alvies asserts this Second Cause of Action for violation of California's Unfair Competition Law.

75.    CrossFit, ROES 1 through 10, and each of them have engaged in a pattern of harassing conduct directed at Alvies wherein they have sought to cause the Blog and Alvies' Facebook page to be permanently deleted, and for Alvies to stop selling vitamin meal-replacement shakes in an improper effort to eradicate all Internet evidence of Alvies' prior use in commerce of marks subject to the Intent-to-Use Applications regarding meal-replacement shakes, computer software to track workouts, and others,

1   and to eliminate competition by Alvies.

2        76.     Counter-defendants' above-described misconduct is a fraudulent business

3   practice as that term is used in Business and Professions Code section 17200 because a

4   reasonable person would have been deceived by the representations and material

5   omissions by Counter-defendants concerning CrossFit's intellectual property rights.  For

6   example, Alvies is informed and believes that Facebook was deceived by the

7   representations and omissions by Counter-defendants in CrossFit's DMCA takedown

8   notice concerning Alvies' Facebook page and, in reliance thereon, disabled Alvies'

9   Facebook page.  As another example, Counter-defendants are engaged in an ongoing

10  fraud on the Trademark Office by attempting to eradicate evidence of existing uses of the

11  marks subject to the Intent-to-Use Applications.

12       77.     Counter-defendants' above-described misconduct is an unfair business

13  practice, as that term is used in Business and Professions Code section 17200, because

14  Counter-defendants' conduct offends established public policies, including policies

15  arising out of state and federal antitrust laws, and is immoral, unethical, oppressive,

16  unscrupulous and substantially injurious to the victims of Counter-defendants' conduct.

17       78.     Counter-defendants' above-described misconduct is an unlawful business

18  practice, as that term is used in Business and Professions Code section 17200, because

19  Counter-defendants' conduct violates 17 U.S.C. § 512(f), the Lanham Act, the Trademark

20  Act, and state and federal antitrust laws.

21       79.     By carrying out the above-described misconduct, Counter-defendants

22  engaged in unlawful, unfair, and fraudulent business practices in violation of California

23  Business and Professions Code section 17200.

24       80.     As a result of Counter-defendants' misconduct, Alvies has been harmed by

25  the removal of the Facebook page and by the time and expenses associated with

26  complying with and responding to CrossFit's ongoing harassment.

27  //

28  //

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

### THIRD CAUSE OF ACTION

### (False Advertising Under the Lanham Act, 15 U.S.C. § 1125,

### Against All Counter-Defendants)

81.     Alvies asserts this Third Cause of Action for false advertising <u>in the alternative</u> to her affirmative defenses asserted in her Answer to the Complaint.

82.     In its Complaint, CrossFit alleges that Alvies and CrossFit are engaged in businesses so similar that the use of similar marks by each is likely to cause consumer confusion, deception, and mistake as to the affiliation, connection, or association of Alvies or the Blog with CrossFit, and as to whether the goods and services offered on the Blog originate from, or are sponsored or approved by, Alvies.  In other words, CrossFit alleges that Alvies and CrossFit are business competitors.

83.     CrossFit has made false and misleading representations of fact to consumers—namely, readers of the Blog—regarding Alvies' goods and services in violation of 15 U.S.C. § 1125(a).   For example, CrossFit, through its agents, representatives, and employees, has falsely stated to readers of the Blog, under the guise of expert authority, that Alvies' workouts are "bad," "stupid," or "unsafe."

84.     CrossFit's acts have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among consumers and irreparably injure Alvies' goodwill and reputation, for which Alvies has no adequate remedy at law.

85.     CrossFit's conduct demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with Alvies, to the great and irreparable harm of Alvies.

//
//
//
//
//

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaimant prays for judgment against Counter-Defendants as follows:

1.    For the declaratory relief sought by Counterclaimant in her First Cause of Action;

2.    That the Court enter a judgment finding that Counter-Defendants have violated California Business and Professions Code section 17200;

3.    In the alternative to the affirmative defenses asserted by Alvies in her answer to the Complaint, that the Court enter a judgment finding that Counter-Defendants have engaged in False Advertising in violation of 15 U.S.C. § 1125(a);

4.    That the Court award Alvies her costs in this action, including reasonable attorneys' fees and expenses, pursuant to 17 U.S.C. § 512(f) and 15 U.S.C. § 1117(a); and

5.    That the Court order such other relief as it determines is just and proper.

Respectfully submitted,

DATED:  October 24, 2013                    **KRONENBERGER ROSENFELD, LLP**


                                            By:  ___s/ Virginia Sanderson_____
                                                    Virginia Sanderson

                                            Attorneys for Defendant Jenni Alvies



**DEFENDANT J. ALVIES' FIRST AMENDED COUNTERCLAIM**

1

## JURY DEMAND

2      Pursuant to Federal Rule of Civil Procedure 38, Defendant respectfully demands

3  that this action be tried to a jury of the maximum number allowable by law, on all issues

4  so triable.

5

6  Respectfully submitted,

7  DATED:  October 24, 2013                    **KRONENBERGER ROSENFELD, LLP**

8

9                                              By:  ___s/ Virginia Sanderson_____

                                                   Virginia Sanderson

10

                                            Attorneys for Defendant Jenni Alvies

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28